E. M. KIRKPATRICK v. E. C. WORK, W. M. SWEAT, R. A. McGEACHY, as Trustees for the unsecured creditors of the First National Bank of Milton, Florida, C. W. COBB and wife, LILY DHU COBB.

183 So. 708.
Division A.
Opinion Filed October 13, 1938.

*John T. Wigginton,* for Appellant;

*Yonge, Beggs & Carter* and *R. A. McGeachy,* for Appellees.

PER CURIAM.—The appeal brings for review final decree in foreclosure proceedings.

Appellant poses six questions for our consideration, as follows:

"Where an elderly woman in poor health delivers to her son-in-law money to invest for her, leaving it entirely to his discretion as to how it shall be invested, and he thereafter has a note and first mortgage made by himself and wife to a third party, assigned to his mother-in-law, he paying the holder of the mortgage therefor, can a second mortgagee who took its mortgage with actual and constructive knowledge of the existence of the first mortgage successfully contend that the first mortgage was cancelled as to it by reason of the payment by the mortgagors to the holder of the mortgage, where the property covered by the mortgage is the constitutional homestead of the mortgagors?"

QUESTION No. 2: "Where a husband and wife give a mortgage on their constitutional homestead to a bank to secure the indebtedness of the husband, reciting in the mortgage that it is subject to a prior mortgage, and the husband pays certain amounts to the holder of the prior mortgage, instructing the holder not to credit the same on the mortgage indebtedness, and, upon payment of the entire amount, takes an assignment to another debtor, of his, can the holder of the second mortgage have such mortgage declared a first mortgage by reason of the payments made?"

QUESTION No. 3: "If a mingled fund is reduced to a sum below the amount of a trust fund, can the trustee subsequently add sums to the fund from other sources with the intent of restoring said trust fund and thereby make the same whole?"

QUESTION No. 4: "Is the burden of proving the allegations of fraud, upon which the complainant bases his right

to relief,· upon saiid complainant, and will fraud be presumed or must it be proved?"

QUESTION No. 5: "Does not the evidence adduced in this case and set forth in the Bill of Exceptions show that the money paid by the appellee, C. W. COBB, to the holder of the first mortgage on his homestead, was money belonging to his mother-in-law, the appellant to whom the mortgage was assigned?"·

QUESTION No. 6: "Even if the holding of the lower court in this case to the effect that the bank's mortgage was prior in dignity to the mortgage held by Mrs. KIRKPATRICK, was it not error to dismiss the suit as to MRS. KIRKPATRICK where both the mortgagors admit that·her mortgage was in full force and effect?"

The appellee, not being satisfied with the questions as stated by appellant, says there is presented here one main question, as follows:

"Where 'a mother-in-law delivers· to her son-in-law in whose home she lives as a member of his family, a sum of money which he deposits in his personal bank account and promptly checks out for his own purposes and later, after the account has been overdrawn for a long time, pays off two mortgages on his home from funds of his own, most of which he has deposited in the same bank account, and one of the mortgages is paid in small installments over a period of years, and he causes assignments of the two mortgages when fully paid to be made to his mother-in-law, which assignments he keeps in his own possession for a long time and withholds one assignment from record·for several years and the other assignment is of only part of the mortgage indebtedness and is made at the time of the last payment on the indebtedness, is the Chancellor justified in holding that such mortgages are discharged as against a third mortgage on the same property, notwithstanding the

assertion by the son-in-law that his mother-in-law had de-livered said money to him for investment for her and that he had invested it for her in said two mortgages?"

And one subsidiary question, as follows:

"If the Chancellor has correctly held in a proceeding to foreclose a mortgage that two other mortgages sought to be foreclosed by cross bill have been paid by the mortgagor with his own funds and discharged, and it appears in addi-tion that the property involved was worth less than amount of the decree upon the mortgage held under the main bill to be a first lien, would the Chancellor be justified in dismiss-ing the cross bill without prejudice to cross-complainant's rights against the mortgagor?"

The history of the case may be succinctly stated as fol-lows: This is a suit for the foreclosure of a mortgage given by C. W. Cobb and his wife to the First National Bank of Milton upon his homestead in the town of Milton, secur-ing a principal indebtedness of $4600.00. While the mort-gage foreclosed was made in 1933, it was a renewal of a mortgage between the same parties upon the same property and securing the same indebtedness, which had been made in October, 1927.

Mrs. E. M. Kirkpatrick, the appellant, was made a party defendant to the foreclosure because she was the apparent record owner of two other mortgages upon the same prop-erty, each given by C. W. Cobb and wife to Mrs. E. M. Golson, one for $600.00, dated June 9, 1925, and the other originally for $2800.00, dated December 19, 1923. The bill alleges that the mortgage sought to be foreclosed (which we shall call the bank's mortgage) was a first lien on the land covered by it, that the two mortgages to Mrs. E. M. Golson had been discharged by payment, and that the pur-ported assignments of them to Mrs. E. M. Kirkpatrick as shown by the record were in fraud of the rights of the bank

and were void. By her answer Mrs. Kirkpatrick asserted that she held the two Golson mortgages undischarged and that their liens were prior to the lien of the bank's mortgage. By cross-bill she sought to foreclose these two mortgages. Mrs. Kirkpatrick, the appellant, is the mother-in-law of the defendant, C. W. Cobb, and has lived in his home, which is the land under foreclosure, since about 1925. In 1929 she had $2100.00 on deposit as a savings account in The First National Bank of Milton, of which bank C. W. Cobb was then and remained until 1933, the cashier. On October 4, 1929, Mrs. Kirkpatrick delivered this money to her son-in-law, the defendant, C. W. Cobb, by a check on her savings account and on the same day Cobb deposited it in his personal checking account in the same bank. During all of the transactions involved in this case, this was Cobb's only bank account except a small inactive one in Pensacola which was closed in 1930. Kenneth Kirkpatrick, a son of Mrs. E. M. Kirkpatrick, testified that he had recommended that his mother place this fund in Cobb's hands for investment and Cobb testified that she delivered it to him for that purpose. Cobb's bank account was overdrawn when he made this deposit in it. He immediately began to use this money for his own purposes by drawing checks on this account, and within thirty days after the deposit all of it was withdrawn and the account was left overdrawn in a substantial amount. He continued to use his bank account in the ordinary way, making deposits and withdrawals from time to time until the bank closed in March, 1933; but the account was overdrawn during the greater part of the time, sometimes for months at a time and usually in large amounts. He kept no record of Mrs. Kirkpatrick's money or any written evidence of his handling of it and made no accounting of it to anyone, except that he turned over to Kenneth Kirkpatrick the two Golson mortgages at some-

time after the assignments to Mrs. Kirkpatrick were recorded in December, 1934. He kept no check stubs and all checks have been destroyed. He could remember no investment made for Mrs. Kirkpatrick (other than those two mortgages on his home) except possibly one German bond as to which he was uncertain. His recollection is that there were no others. Early in 1930 when Mrs. Golson pressed for payment of the $600.00 mortgage, Cobb paid her that amount on January 21, 1930, by his check on the same bank account which had been overdrawn practically continuously since the deposit of Mrs. Kirkpatrick's money, and took an assignment of the mortgage to Mrs. Kirkpatrick. This assignment was prepared by Cobb in typewriting with the name of the assignee left blank and Mrs. Kirkpatrick's name was written in by Cobb with a pen at some time after the paper was drawn. He testified that he thinks it was filled in before the assignment was executed but is in some doubt about it. Cobb withheld this assignment from the record until December 4, 1934—nearly five years—and at some later date gave it to Kenneth Kirkpatrick. Cobb's other mortgage on this property to Mrs. Golson originally secured $2800.00 and was made in 1923. In June of 1932, when this debt had been paid down by Cobb to $1460.00, Mrs. Golson turned it over to her attorney for collection. Between that time and February 21, 1933, Cobb made to Mrs. Colson several payments on it aggregating $960.00. He requested that these payments be not credited on the note, stating that he wanted to keep the mortgage alive. He gave no other reason for this, indicated no person for whose benefit the payments were made, and no assignment was made to Mrs. Kirkpatrick or anyone else in connection with any of these payments. The source of all of these payments was Cobb's bank account. One of them, a payment of $160.00, was endorsed on the note and is treated by Cobb

in his testimony as being from his own funds and in reduction of the debt. The others were not credited on the note and are treated by Cobb as having been made from Mrs. Kirkpatrick's funds. The earliest of these payments was made about three years after her money had been dissipated. After these payments only $500.00 remained unpaid on the indebtedness. Cobb then procured T. W. Jones to take up the mortgage and it was assigned to him by Mrs. Golson on February 21, 1933, upon his payment of $500.00 to her.

Later Cobb paid Jones this remaining $500.00 in two payments, which appellant now admits were from his own funds, and procured an assignment of the mortgage from Jones to Mrs. Kirkpatrick.

Upon final hearing the Chancellor decreed a foreclosure of the bank's mortgage, holding that the indebtedness secured by the two Golson mortgages had been paid by Cobb to the holders of them with his own funds and that as against the complainant trustees those mortgages were fully satisfied and discharged, and that they and the assignments of them to Mrs. Kirkpatrick were clouds on the complainants' title and removed them as such. The cross-bill of Mrs. Kirkpatrick seeking foreclosure of the two Golson mortgages was dismissed without prejudice to any rights of Mrs. Kirkpatrick against Cobb and his wife.

This state of facts is deducible from the record and it appears that, based on these facts, the Chancellor rendered his decree.

The law applicable to the case had to be determined from the facts found to exist. The record shows that the correct legal principles were applied to the facts disclosed by the record.

On consideration of the entire record, we find no reversible error. So the decree is affirmed.

So ordered.

Affirmed.

ELLIS, C. J., and TERRELL and BUFORD, J. J., concur.

WHITFIELD, P. J., and BROWN and CHAPMAN, J. J., concur in the opinion and judgment.